UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT GORMAN,<br><br>　　　　　　Plaintiff,<br><br>-against-<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, INC., and HSBC MORTGAGE SERVICES, INC.,<br><br>　　　　　　Defendants. | Civil Action No.: 07 CV 1846 (Patterson, J.)<br><br>ECF Case |

## AFFIDAVIT OF KIMBERLY HUGHES

KIMBERLY HUGHES, hereby declares:

1. I am a Consumer Affairs Special Services ("CASS") specialist consultant for Experian Information Solutions, Inc. I work at Experian's National Consumer Assistance Center, located at 701 Experian Parkway, Allen, Texas 75013.

2. One of the primary responsibilities of our department is to investigate disputes by consumers with regards to the information provided on consumers' disclosures.

3. Based upon my experience with Experian, I am very familiar with Experian's procedures pertaining to consumer disputes, Experian's procedures pertaining to consumers requests for copies of their credit files, and with the business records maintained by Experian's Consumer Assistance Center. All documents referenced herein were kept by Experian in Experian's ordinary course of business. Unless otherwise stated, the facts set forth herein are

based upon my personal knowledge, and if I were called upon to testify to them, I could and would competently do so.

4. Experian operates a consumer credit reporting agency pursuant to the Fair Credit Reporting Act (hereinafter, the "FCRA"). Experian gathers credit information originated by others and makes that information available to parties engaged in credit related transactions. Experian does not originate or create any credit information and Experian does not make loans or decide who should receive credit. Both of those functions are handled entirely by the credit granting industry, over which Experian has no control.

5. Experian essentially acts as a storehouse of credit information by storing, retrieving and furnishing data as allowed by the FCRA. Credit grantors report to Experian credit information called "trade lines" that consist of credit account information such as account number, account payment status, and balance information. Along with trade lines, credit grantors report certain identifying information associated with the trade line.

6. Experian has developed detailed procedures for providing consumers with access to their Experian credit files and means to dispute those items with which they disagree. Consumers who disagree with the accuracy or completeness of any item of information can dispute those items directly with Experian, pursuant to the FCRA. Experian does not have access to creditors' records. Therefore, after receiving consumer disputes, Experian generally reinvestigates disputed information by contacting the furnishers who reported it, explaining the consumer's dispute, and asking for a response concerning the accuracy of the information. Experian sends the furnisher, i.e., the creditor, a "Consumer Dispute Verification." Experian sends the Consumer dispute form manually (a "CDV") or electronically (an automated CDV or

"ACDV"). The CDV or ACDV identifies the consumer and the basis of her dispute and asks the creditor to verify the information it currently is reporting to Experian. The creditor then returns the CDV or ACDV to Experian and may verify the information, instruct Experian to delete the item, or instruct Experian to change it in some specific manner. Experian then makes any changes instructed by the creditor and sends the consumer a statement reflecting the results of the reinvestigation. If the creditor fails to respond, then the information is updated or deleted, contingent on the consumer's dispute. Again, the consumer is notified.

7. I am familiar with and have reviewed the credit file of Plaintiff Robert S. Gorman. To the best of my knowledge and belief, according to Experian's records, Plaintiff contacted Experian by telephone to request a complimentary copy of his file disclosure. A consumer disclosure, also identifiable as report number 1136882876, was prepared and mailed to Plaintiff's home address on December 19, 2002.

8. According to Experian's records, this December 19, 2002 consumer disclosure, also identifiable as report number 1136882876, included a credit line item for Household Mortgage Service, reference number 3941283, relating and detailing a 30 year loan for an original amount of $90,000.

9. According to Experian's records, this December 19, 2002 consumer disclosure, also identifiable as report number 1136882876, also included a credit line item for Household Mortgage Services, reference number 3941275, relating and detailing a 30 year loan for an original amount of $360,000.

10. According to Experian's records, Plaintiff contacted Experian via the Internet on January 31, 2003 to initiate an investigation into his credit file.

11. According to Experian's records, an investigation into Plaintiff's credit file was conducted and confirmation of the investigation results were mailed to Plaintiff on February 10, 2003.

12. According to Experian's records, Plaintiff contacted Experian by telephone on March 10, 2003 to request another investigation into his credit file.

13. According to Experian's records, an investigation into Plaintiff's credit file was and mailed confirmation of the results to Plaintiff on March 20, 2003.

14. According to Experian's records, Plaintiff next contacted Experian by telephone on February 11, 2005 to request a complimentary copy of his credit file disclosure.

15. According to Experian's records, a consumer disclosure for Plaintiff was prepared and mailed to Plaintiff on February 11, 2005.

16. According to Experian's records, Plaintiff contacted Experian by telephone on July 19, 2006 to request his annual free credit report.

17. According to Experian's records, a consumer disclosure for Plaintiff was prepared and mailed to Plaintiff on July 19, 2006.

18. According to Experian's records and to the best of my knowledge and belief, Plaintiff's contacted Experian by mail dated August 31, 2006 to request an investigation into his credit file, the complete contents of the letter having been produced as EXP-GOR 000070 – EXP-GOR 000075, including a single excepted page from his July 19, 2006 annual free credit report (EXP-GOR 000070).

19.     According to Experian's records and to the best of my belief and knowledge, it appears that the letter was reviewed in its entirety and that the Experian agent did determine that he was representing that a deed-in-lieu of foreclosure had occurred and also that the account could not be deemed past due past the date of April 30, 2002, and that he was disputing and requesting correction of every past due entry appearing for that account. The documentation that he sent in, from our review, would support that a deed-in-lieu was occurring, but our records showed that a deed-in-lieu was the status of his account, so that was not something that entailed updating. While the letter could support the suggestion that a deed-in-lieu of foreclosure occurred on a certain date, the letter and deed-in-lieu documents, regardless of whether the documents were a certified copy or otherwise, could not provide information as to whether the account had never been past due or delinquent prior to the deed-in-lieu of foreclosure. Thus, the letter and documents were reviewed and used as part of the investigation, but Experian was not able to use it to make the specific updates that the consumer was requesting. As a courtesy and as part of Experian procedure, we would then make that notification to the consumer in a letter and then proceed with the investigation, using the submitted letter and documents as part of the investigation.

20.     According to Experian's records, a letter response to Plaintiff's request for an investigation dated September 8, 2006 was mailed to Plaintiff. This letter read, in part, that Experian would be contacting the source of the information that Plaintiff had questioned and that the verification process may take up to 30 days or up to 45 days for an investigation of information in an annual free credit report, whereupon the results would be sent to Plaintiff.

21.     According to Experian's records, an Experian agent prepared an ACDV (automated consumer dispute verification) form, and this form was transmitted, along with a

description of the documents that we had received from Plaintiff and an indication that the account was under dispute, to HSBC Mortgage Services. The E-OSCAR system, which is the web-based system used for processing these ACDVs by Experian and the other credit reporting agencies, provides a field for Experian ACDVs called "Date of Account Information." The E-OSCAR rule and understanding of creditors is that this field lists whenever the account reaches its final status. It is also the rules for E-OSCAR for a deed-in-lieu of foreclosure that the date of account information be the date of the deed conveyance, because the date entered into that field will result in no further reporting of any information on that account after that date. In HSBC Mortgage Services' September 11, 2006 response to the ACDV, the HSBC Mortgage Services' operator input a date of September 11, 2006 as the date of the account information which, per the E-OSCAR rules, would be listed as the date of the deed-in-lieu of foreclosure.

22. According to Experian's records, Experian completed the investigation of items in Plaintiff's credit file and reported confirmation and disclosure of the results by mail to Plaintiff on October 6, 2006. This report conveyed to Plaintiff in writing a number of actions that he could take if he still disagreed with the results. One of those was to add a statement of dispute to his report. Another was to contact us and request a description of how we verified the information, and our customer service phone number was provided.

23. According to Experian's records, Plaintiff did not pursue any of these courses of action and did not further contact Experian until after the March 2, 2007 date of filing his Complaint. Plaintiff contacted Experian by mail on March 3, 2007 to request his annual free credit report.

_Kimberly Hughes_
Kimberly Hughes

SUBSCRIBED AND SWORN to before me this 15th day of May, 2008.



_Rick V. Haas_
Notary Public for Texas
My commission expires: 09-22-11