UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

ROBERT GORMAN

                    Plaintiff

-vs-

EXPERIAN INFORMATION SOLUTIONS, INC.,
EQUIFAX INFORMATION SERVICES, INC., and
HSBC MORTGAGE SERVICES, INC.

                    Defendant

———————————————————————

Case No: 07 CV 1846

**PLAINTIFF ROBERT GORMAN'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT HSBC MORTGAGE SERVICES, INC.
AND DEFENDANT EXPERIAN INFORMATION SOLUTION. INC'S
<u>MOTIONS FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................... 1

STATEMENT OF MATERIAL FACTS ...................................................... 2

ARGUMENT ........................................................................................ 4

I. THE SUMMARY JUDGMENT STANDARD ...................................... 4

II. A REASONABLE JURY COULD FIND THAT HSBC
VIOLATED THE FCRA ................................................................... 5

A. The Structure Of The Fair Credit Reporting Act ....................... 5

B. The Plaintiff's Complaint Does Not Allege That
HSBC Violated Section 1681s92(a) .......................................... 7

C. A Reasonable Jury Could Find That HSBC Violated
Section 1681s-(2)(b)(1)(A) By Failing to Conduct
A Reasonable Reinvestigation of the Plaintiff's Disputes ........... 7

1. The Information HSBC Reported to Experian Was Not Accurate ........................... 8

2. A Jury Could Find That HSBC's Reinvestigation Was Not Reasonable ...................... 10

D. HSBC Violated Section 1681s-2(b)(1)(D) by Failing to Report
the Results of the Equifax Investigation to All Other Consumer
Reporting Agencies ................................................................. 11

E. A REASONABLE JURY COULD FIND THAT HSBC WILLFULLY
VIOLATED THE FCRA ............................................................ 13

F. TRIABLE ISSUES OF FACT EXIST REGARDING
THE PLAINTIFF'S DAMAGES ................................................. 14

G. THE PLAINTIFF DOES NOT OPPOSE DISMISSAL OF HIS
DEFAMATION CLAIMS AGAINST BOTH DEFENDANTS .................................. 14

III. A REASONABLE JURY COULD FIND THAT EXPERIAN
VIOLATED THE FCRA ................................................................. 15

A. A REASONABLE JURY COULD FIND THAT THE PLAINTIFF
WAS DAMAGED BY THE DEFENDANT'S INACCURATE REPORTING

OF THE SUBJECT ACCOUNT .............................................................. 15

1.    The Plaintiff Suffered Economic Damages as a Result of the Inaccurate
       Reporting of the Subject Account ......................................................... 15

2.    The Plaintiff Suffered Emotional Harm as a Result of the Inaccurate
       Reporting of the Subject Account ......................................................... 17

B.  THE PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE FCRA'S
     STATUTE OF LIMITATIONS ................................................................. 18

C.  A REASONABLY JURY COULD FIND THAT EXPERIAN BOTH
     BOTH NEGLIGENTLY AND WILLFULLY VIOLATED THE FCRA ..................... 19

CONCLUSION ...................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 107 (2d Cir. 1998)............................ 5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ............................................................. 5

*Bach v. First Union National Bank*, 149 Fed.Appx. 354, 361-62 (2005 6th Cir) ............................. 18

*Bruce v. First U.S.A. Bank, N.A..* 103 F.Supp. 2d 1135 (E.D. Mo. 2000)........................................10

*Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) ....................................................................... 4

*Campbell v. Baldwin*, 90 F.Supp.2d 754, 756 (E.D. Tex. 2000)........................................................ 6

*Crabill v. Trans Union LLC*, 259 F.3d 662, 663 (7th Cir. 2001)........................................................ 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ................................................................. 4,5

*Cushman v. Trans Union Corp.*, 115 F.3d 220, 224-25 (3rd Cir. 1997) ................................. 19, 20, 21

*Dalton v. Capital Associated Indus. Inc.*, 257 F.3d 409, 413 (4th Cir. 2001) ..................................... 9

*Dimezza v. First USA Bank, Inc.*, 103 F.Supp.2d 1296 (D. N.M. 2000); ...........................................6

*Dornhecker v. Ameritech Corp.*, 99 F.Supp.2d 918 (N.D. Ill. 2000) .................................................6

*Garret v. Trans Union*, 2006 WL 2850499 (S.D. Ohio 2006) ........................................................... 9

*Henson v. CSC Credit Services*, 29 F.3d 290, 287 (7th Cir. 1994). ..............................................10, 19

*Hruoccy v. Direct Merchants Credit Card Bank, NA*, 371 F.Supp. 2d 1058 (E.D. Mo 2005) ........... 10

*Hyde v. Hibernia National Bank*, 861 F.2d 446, 450 (1988 5th Cir.). ............................................. 19

*Johnson v. MBNA Bank*, 357 F.3d 426, 431 (4th Cir. 2004) ...................................................... 10, 11

*Koroupolous v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir 1984) ............................................. 9

*Lawrence v. TransUnion, LLC*, 296 F.Supp 2d 582, 587 (2003 E.D. Pa.); ...................................... 19

*Mandly v. Bank One Dayton*, 2000 U.S. Dist. Lexis 16269 (D. Ariz. 2000) ...................................... 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ..................................5

*McMillan v. Experian Info. Serv.*, 119 F.Supp.2d 84 (D. Conn. 2000)....................................................6

*Nelson v. Chase Manhattan Mortgage,* 282 F.3d 1057 (9th Cir. 2002) ................................... 6

*Patrolmen Benevolent Ass'n v. City of New York*, 310 F.3d 43, 56 (2002 2nd Cir) ......................... 17

*Philbin v. TransUnion*, 101 F.3d 957, 969 (3rd Cir. 1996) ......................................................... 15, 16

*Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986). ................................................... 19

*Podell v. Citicorp Diners Club Inc.*, 112 F.3d 98 (2nd Cir 1997) ....................................... 21

*Safeco Ins. Co. of America v. Burr*, 127  S.Ct., 2201, 2215-16 (2007)............................................13, 14

*Seuplvado v. CSC Credit Services*, 158 F.3d 890, 895 (5th Cir. 1998) ................................. 9

*Schaffhausen v. Bank of American, NA*, 393 F.Supp.2d 1058853 (D. Minn. 2005) ............................10

*Whitesides v. Equifax Credit Information Services, Inc.*, 125 F.Suppp. 813, 817 (2000 W.D. La)... 19

*Young v. Equifax Credit Info. Serv.*, 2002 U.S. App. Lexis 11159 (5th Cir., June 11, 2002)................ 7

## PRELIMINARY STATEMENT

On April 30, 2002, plaintiff Robert Gorman granted defendant HSBC Mortgage Services' predecessor a Deed in Lieu of Foreclosure which unquestionably extinguished all his further obligations to HSBC. Nonetheless, HSBC continued to hound Mr. Gorman for years by placing false information on Mr. Gorman's credit reports that he still owed HSBC nearly $9,000 and an re-aged the account to make the default seem as if it happened four years later than it actually did. Even after Mr. Gorman repeatedly informed HSBC of its mistakes HSBC steadfastly refused to remove the erroneous information from Mr. Gorman's credit report. In doing so, HSBC violated section 1681s-s(b) of the Fair Credit Report Act [15 USC § 1681 *et seq.*] ("FCRA").

After its own credit dispute manager admitted under oath that HSBC reported clearly erroneous information to Experian in responses to Mr. Gorman's dispute of the subject account, HSBC has the audacity in this motion to claim that it never reported any inaccurate information regarding the plaintiff's subject account. It then totally ignores recent Supreme Court precedent in arguing that the plaintiff's willful claims under the FCRA should be dismissed.

Defendant Experian Information Solutions, Inc. ("Experian") acted as HSBC's enabler in this case by continuing to report patently false information regarding Mr. Gorman at the request of its client HSBC. By failing to conduct even a cursory independent investigation after Mr. Gorman notified them that he was disputing the subject accounts, Experian violated section 1681i of the FCRA.

Finally, the plaintiff suffered substantial damages as a result of the defendants' jointly unlawful conduct. He was repeatedly denied mortgage applications because of the erroneous reporting as he sought to purchase a home for his wife and three children. As a result he suffered quantifiable economic damages and a substantial amount of emotional distress.

1

Accordingly, at the very minimum friable issues of fact exist regarding all of the plaintiff's allegations that HSBC and Experian failed to comply with their legal obligations under the FCRA. As such the plaintiff respectfully requests that the court deny the defendants' respective motions for summary judgment.

## STATEMENT OF MATERIAL FACTS

On or about November 6, 2000, plaintiff Robert Gorman obtained two mortgages from defendant HSBC's predecessor-in-interest, Household Bank. [Gorman Decl. ¶ 3]. In early 2002 Mr. Gorman began to experience serious financial difficulties after losing his job and being unable to find new employment. As a result, Mr. Gorman realized that he would not be able to make his monthly payments to Household Bank. [Gorman Decl.. ¶ 5] Mr. Gorman discussed the situation with Household Bank, and the Bank requested that he execute a "deed-in-lieu of foreclosure" on the property. The Bank explained that by executed a "deed-in-lieu", Mr. Gorman would relinquish his interest in the subject property, and in exchange Household would completely extinguish any further obligations under the mortgages, and it would also refrain from filing any foreclosure proceedings against Mr. Gorman [Gorman Decl, ¶ 6].

On April 30, 2002 Mr. Gorman executed the necessary documentation provided to him by Household Bank and thus provided them with a "Grant Deed in Lieu of Foreclosure." [Gorman Decl. ¶ 7]. The documents executed by Mr. Gorman specifically stated that "the consideration for said deed was and is the full cancellation of all debts, obligations, costs and charges secured by that certain deed of trust heretofore existing on said property executed by: Robert S. Gorman." [*Id*]. Accordingly, as of April 30, 2002, Mr. Gorman was no longer owed any amount to Household Bank regarding the subject mortgage. As of that date, Mr. Gorman was three months past due on both mortgages. [Gorman Decl. ¶ 8].

2

On July 19, 2006 Mr. Gorman obtained a copy of his Experian credit report.  [Gorman Decl. ¶ 10].  That report falsely stated that foreclosure proceedings had been started on the HSBC mortgage as of September 2002 and that Mr. Gorman had a past due balance on the account of $8,702, and that the account had been over 120 days past due  [*Id*].  Accordingly, on or about August 31, 2006 Mr. Gorman sent a dispute letter to Experian explaining precisely why the information it was reporting regarding the HSBC mortgage was not accurate, and also enclosed a copy of the subject "Deed in Lieu of Foreclosure." [Gorman Decl. ¶ 11].  On September 8, 2006 Experian sent Mr. Gorman a letter which stated that "[u]pon careful review of your information, we determined that we were not able to use it" but that Experian would continue with its verification process [Gorman Decl. ¶ 12]. On October 6, 2006 Experian completed its reinvestigation of the disputed HSBC tradeline, and informed Mr. Gorman that as a result of his dispute, it had "updated" the disputed tradeline.  In fact, Experian "updated" the tradeline in a manner that was significantly worse (and even less accurate) than the prior reporting of the account.  Experian "updated" the tradeline to state that Mr. Gorman still owed $8,702 on the account, and that the account was 180 days past due as of September 2006. [Gorman Decl. ¶ 13].

Similarly, on our about July 20, 2006 Mr. Gorman reviewed his Equifax credit report.  [Gorman ¶ Decl. 14].  The Equifax report erroneously stated that Mr. Gorman owed HSBC Mortgage a past due amount of $8,729 and that the account was over 120 days past due.  [*Id*.].  Since Mr. Gorman did not owe HSBC Mortgage any amounts as of that date, and was necessarily not "currently past due" on the account, on or about August 31, 2006 Mr. Gorman also send a dispute letter to Equifax, explaining why the information Equifax was reporting about this account was not accurate, and included the subject "Deed in Lieu of Foreclosure." [Gorman Decl. ¶ 15].  On September 20, 2006 Equifax completed its reinvestigation of the plaintiff's dispute, and informed Mr. Gorman that the "status of

his account has been updated." However, Equifax continued to inaccurately report that the account was still currently 90-119 days past due. [Gorman Decl. ¶ 16].

In January 2007 Mr. Gorman was residing with his wife and three children in a one-bedroom apartment, and wished to purchase a larger home for his family. Accordingly, he applied for three mortgages with three different lenders. [Gorman Decl. ¶ 19]. Despite that fact that Mr. Gorman's income at that time was over $100,000/per year, he was turned down from all three lenders. [*Id.*]. The only major delinquency on Mr. Gorman's credit reports at that time was the aforementioned HSBC Mortgage account, and Mr. Gorman was informed by all three lenders that the sole reason for his denial was the reported recent major mortgage delinquency being reported by HSBC Mortgage. [*Id.*].

Finally, receiving notification of this lawsuit, defendants HSBC, Experian and Equifax decided to remove the disputed HSBC Mortgage tradeline from Mr. Gorman's credit reports. Accordingly, in August 2007 Mr. Gorman was in fact able to obtain a home mortgage. However, the delay in approval from January though August 2007, Mr. Gorman will incur an estimated $16,000 in additional payments on his mortgage. [Tarter Report p. 13].

## ARGUMENT

## I.     THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "[T]he moving party bears the initial burden of establishing that there are no genuine issues of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *See*

*also Celotex Corp.*, 477 U.S. at 323.  In making a summary judgment determination, the court must resolve all "facts, inferences and ambiguities in a light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 107 (2d Cir. 1998).

## II.    A REASONABLE JURY COULD FIND THAT HSBC VIOLATED THE FCRA

### A.  The Structure of the Fair Credit Reporting Act

The FCRA imposes responsibilities on three categories of persons: "users," "credit reporting agencies," and "furnishers."  "Users" are permitted to access and "use" a consumer's credit report only under certain circumstances. (e.g. 15 U.S.C. §§ 1681, 1681(e)).  "Credit reporting agencies" are subject to most of the requirements within the FCRA.  The statute details to whom and how a credit report may be delivered (15 U.S.C. § 1681(b)); the disclosures required from the credit reporting agencies (15 U.S.C. § 1681(g)) and how these may be made (15 U.S.C. § 1681(h)).  And the FCRA establishes a detailed procedure by which a consumer may dispute inaccurate information within their credit files (15 U.S.C. § 1681(i)).  The furnisher is the person who actually reports information to a credit reporting agency.  Usually the furnisher is a creditor.  The responsibilities of furnishers are now detailed at 15 U.S.C. § 1681s-2.  This section was enacted as an amendment to the FCRA in 1996.

The first lettered subsection of 1681s-2 lists a wide range of furnisher responsibilities which govern how a creditor is to maintain and report information on a consumer.  15 U.S.C. §1681s-2(a).  These obligations include a duty to maintain accurate information and to correct and update inaccurate information.  This subsection would certainly impose liability in the present case, if it had a private remedy.

However, in 1996, together with subsection (a) (and subsection (b) discussed later), Congress also enacted, 15 U.S.C. §§ 1681s-2(c) and (d).  These subsections expressly exclude subsection (a) violations from the otherwise inclusive FCRA remedy sections, 15 U.S.C. §§ 1681(n) and 1681(o).  Only the Federal Trade Commission and the state government may enforce subsection (a) violations.  There is no private cause of action for a furnisher's violation of 15 U.S.C. § 1681s-2(a).

However, this is not true for 15 U.S.C. § 1681s-2(b). Subsection (b) imposes certain duties upon the furnisher only upon its receipt of a notice of dispute from the credit reporting agency. Essentially, subsection (b) gives the creditor a safe harbor against private remedies if it properly investigates and responds to the consumer's dispute through the credit reporting agency. Unlike subsection (a), nowhere in the FCRA is a violation of subsection (b) excluded from the private remedies of 15 U.S.C. §§1681(n) and 1681(o). Congress was very particular in its enactment of subsections (c) and (d) and included only subsection (a) in their limitations.

The first and only Circuit to consider, analyze, and render a holding on §1681s-2(b), the Ninth, did so in Nelson v. Chase Manhattan Mortgage, 282 F.3d 1057 (9th Cir. 2002). Nelson is a well drafted opinion as it explains the development, legislative background and application of 15 U.S.C. § 1681s-2 in some detail. In concluding that a private cause of action must exist under subsection (b), the court concluded:

> The purpose [of the 1996 amendment] to provide some private remedy to injured consumers, coheres with what we see as a primary purpose for the FCRA, to protect consumers against inaccurate and incomplete credit reporting. The statute has been drawn with extreme care, reflecting the tug of the competing interests of consumers, CRAs, furnishers of credit information, and users of credit information. It is not for a court to remake the balance struck by Congress, or to introduce limitations on an express right of action where no limitation has been written by the legislature. 282 F.3d at 1059.

The Nelson holding is consistent with the reasoning of nearly every court which has considered the 1996 amendments. Hawthorne v. Citicorp Data Sys., 2001 U.S. Dist. Lexis 11483 (E.D. N.Y. 2002); Mandly v. Bank One Dayton, 2000 U.S. Dist. Lexis 16269 (D. Ariz. 2000); Dimezza v. First USA Bank, Inc., 103 F.Supp.2d 1296 (D. N.M. 2000); Campbell v. Baldwin, 90 F.Supp.2d 754, 756 (E.D. Tex. 2000); Dornhecker v. Ameritech Corp., 99 F.Supp.2d 918 (N.D. Ill. 2000); McMillan v. Experian Info. Serv., 119 F.Supp.2d 84 (D. Conn. 2000). In addition, one other circuit court has expressed in discussion and dicta the Ninth Circuit's recognition that a private cause

of action exists under § 1681s-2(b).  *Young v. Equifax Credit Info. Serv.*, 2002 U.S. App. Lexis 11159 (5th Cir., June 11, 2002).

      B.  <u>The Plaintiff's Complaint Does Not Allege that HSBC Violated Section 1681s-2(a)</u>

      In an attempt to gain "momentum" in its motion, HSBC begins its argument by asking the court to dismiss an allegation that does not exist in the plaintiff's complaint.  HSBC correctly states that no private right of action exists under section 1681s-2(a) – which is precisely why the plaintiff's complaint does not contain any causes of action for a violation of that section.  Realizing this "flaw" in its argument, HSBC essentially argues that because the facts in the plaintiff's complaint *could* have stated a cause of action for a violation of section 1681s-2(a), the court should dismiss the plaintiff's cause of action under that section notwithstanding the fact that the plaintiff has not alleged a violation of that section.  Since section 1681s-2(a) is literally not mentioned even once in the plaintiff's complaint, there is nothing for this court to dismiss, and the court should reject HSBC's attempt at gamesmanship.

      C.  <u>A Reasonable Jury Could Find that HSBC Violated Section 1681s-2(b)(1)(A) By Failing to Conduct a Reasonable Reinvestigation of the Plaintiff's Disputes</u>

      Plaintiff's complaint does in fact allege that HSBC violated section 1681s-2(b) – which HSBC does not deny contains a private right of action.  The FCRA provides that a when a furnisher of information to a credit reporting agency receives notice of a dispute made by a consumer through the credit reporting agency, the furnisher is required to conduct an investigation with respect to the disputed information it reported.  15 U.S.C. § 1681s-2(b)(1)(A).  It is also required to review all relevant information provided by the consumer through the credit reporting agency.  15 U.S.C. § 1681s-2(b)(1)(B).  It must then report the results of its investigation to the credit reporting agency.  15 U.S.C. § 1681s-2(b)(1)(C).  Finally, if the investigation finds that the information is inaccurate or incomplete in any way, it must report those results to all other consumer reporting agencies to which the person furnished the information.  15 U.S.C . § 1681s-(2)(b)(1)(D).

1.    The Information HSBC Reported to Experian Was Not Accurate

HSBC argues that it cannot be held liable for violation section 1681s-2(b) because the information it furnished to Experian and Equifax was accurate. That argument is demonstrably false. As explained above, Mr. Gorman executed a Deed in Lieu of Foreclosure to HSBC's predecessor on April 30, 2002. Exhibit A to that document unequivocally provided that in consideration of providing HSBC with the deed to his home (in lieu of a foreclosure), HSBC would in turn provide Mr. Gorman with a "full cancellation of all debts, obligations, costs and charges secured by that certain deed of trust." [Gorman Decl. ¶ 7]. Accordingly, as of that date Mr. Gorman no longer owed *anything* to HSBC. Further, as of that date Mr. Gorman had only been three months (or 90 days) past due on the mortgage. [Gorman Decl ¶ 7].

After receiving notice of Mr. Gorman's dispute from Experian, however, HSBC conducted a reinvestigation and reported three items to Experian which were demonstrably false:

- First, it reported that Mr. Gorman still owed HSBC $8,702. Since the Deed in Lieu expressly extinguished all debts Mr. Gorman owed under the mortgages, that information was false.

- Second, HSBC reported that Mr. Gorman was over 180 days past due on the account. However, since Mr. Gorman was at most 90 days past due when the account was extinguished, that information was false.

- Third, HSBC reported to Experian that Mr. Gorman's was 180 days late on the account as of September 2006, and that HSBC had only received the deed to the home in September 2006. Since Mr. Gorman's delinquency on the mortgage occurred in February through April of 2002, these statements were also demonstrably false.[1]

In fact, HSBC's own manager in charge of credit disputes has acknowledged these inaccuracies. Specifically, she stated that HSBC's records **did not** indicate that Mr. Gorman had ever been 180 days past due on the account [Gardiner 124:4 – 124:17], that there was no justification for informing

---

[1] This practice of making a delinquency seem more recent that it actually was is commonly referred to as "re-aging" an account. It is particularly damaging to a consumer because recent delinquencies are punished much more heavily than older delinquencies for purpose of obtaining credit. See Tarter Expert Report, p. 9.

Experian that Mr. Gorman owed $8,702 on the subject account [Gardiner 127:3 – 127:14], should not have indicated September 2006 as a past due date [Gardiner 127:20 – 128:5] and should not have stated that the creditor received the deed to the property in September 2006 [Gardiner 131:15 – 131:24]. Accordingly, based on these admissions from its credit dispute manager it is disingenuous for HSBC to argue in its motion that there was nothing inaccurately reported on the Experian report.

Similarly, in response to notice of Mr. Gorman's dispute from Equifax, HSBC reported to Equifax that Mr. Gorman's mortgage account was currently 90-119 days past due. Since Mr. Gorman's responsibilities to HSBC were extinguished on April 30, 2002, that information was not accurate. Accordingly, HSBC is simply wrong when it states that the information it reported to Experian and Equifax was accurate.

Furthermore, although not necessarily relevant to the present case since HSBC reported clearly inaccurate information regarding Mr. Gorman to both Experian and Equifax, HSBC incorrectly states that the FCRA allows reporting of information that is "technically accurate" even if it might be "misleading or incomplete in some respect." That is not true. Every precedential opinion by the Federal Court of Appeals has rejected the "technical accuracy" defense – and none have allowed entries which are "misleading." See *Koroupolous v. Credit Bureau, Inc.,* 734 F.2d 37, 40 (D.C. Cir 1984); *Seuplvado v. CSC Credit Services,* 158 F.3d 890, 895 (5th Cir. 1998); *Dalton v. Capital Associated Indus. Inc.,* 257 F.3d. 409, 413 (4th Cir. 2001); *Crabill v. Trans Union LLC,* 259 F.3d 662, 663 (7th Cir. 2001). The courts have all recognized that the FCRA's requirement of "maximum possible accuracy" must have meaning – namely, that a report that is materially misleading cannot possible be deemed maximally possibly accurate if the reporting agency or furnisher could reasonably have made it not misleading.

Additionally, HSBC's reliance on *Garret v. Trans Union,* 2006 WL 2850499 (S.D. Ohio 2006) is misplaced. *Garrett* is easily distinguished from the present case because the credit reporting agency in *Garrett* never stated that the plaintiff still owed any amounts on the subject mortgage – it merely reported that an amount had been "charged off as bad debt." *Id.* at *2. That is completely different from the present case where the plaintiff's October 2006 Experian report very clearly stated that the

plaintiff still owed $8,702 to HSBC (in addition to the other false statements as described above).

Accordingly, this is not a case such as *Garrett* where the credit reports could have been more specific

– this is a case where clearly erroneous information was reported about the subject account.

2.      A Jury Could Find that HSBC's Reinvestigation Was Not Reasonable

The FCRA does not directly define the standard necessary to "conduct an investigation."

However, in a landmark decision the Fourth Circuit in *Johnson v. MBNA Bank*, 357 F.3d 426, 431

(4th Cir. 2004) held that "section 1681s-2(b)(1) required creditors, after receiving notice of a

consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their

records to determine whether the disputed information can be verified."  That standard has been

uniformly adopted by courts considering the same question.  See, e.g., *Hruoccy v. Direct Merchants*

*Credit Card Bank, NA*, 371 F.Supp. 2d 1058 (E.D. Mo 2005); *Schaffhausen v. Bank of American, NA*,

393 F.Supp.2d 1058853 (D. Minn. 2005).  That position was consistent with the only prior published

case which has addressed the issue, <u>Bruce v. First U.S.A. Bank, N.A.</u>. 103 F.Supp. 2d 1135 (E.D. Mo.

2000). <u>Bruce</u> concluded that "whether a reasonable investigation has been conducted is generally a

question of fact for a jury." Id. at 1143 <u>citing</u> Henson v. CSC Credit Services, 29 F.3d 290, 287 (7th

Cir. 1994).  Because the creditor's investigation had consisted solely of a review of its own internal

records, the Court held,

> [A] rational jury considering this evidence could conclude that First U.S.A.
> negligently failed to take reasonable steps to verify the accuracy of the information it
> reported to the agencies.  Summary judgment is therefore inappropriate on plaintiff's
> claim of negligent violation of the FCRA. . . . For the same reasons as stated above
> with respect to plaintiff's claim of negligent violation of the FCRA, I believe that there
> are genuine disputes of fact regarding plaintiff's claim that First U.S.A. willfully failed
> to conduct an investigation of his disputes. <u>Bruce</u>, 103 F.Supp. at 1144.

In the present case there is sufficient evidence for jury to reasonably conclude that HSBC's

investigation into Mr. Gorman's dispute was not reasonable.  For example, and perhaps most

importantly, as part of its reinvestigation HSBC failed to review Mr. Gorman's actual documents,

including the underlying Deed in Lieu of Foreclosure [Gardiner 105:10 – 106:10, 111:5 – 111:7] [ Henning 43:15 – 45:6]. If HSBC's investigators had simply reviewed this document they would have seen that it expressly terminated all of Mr. Gorman's obligations under the subject mortgage as of April 30, 2002. Additionally, HSBC failed to review a dispute letter Mr. Gorman had previously provided to HSBC regarding the subject account which explained the nature of the dispute in great detail. [Gardiner 57:10 – 57:14]. HSBC further failed to make any attempt to contact Mr. Gorman during its reinvestigation of his dispute. [Gardiner 104:1 – 104:12] [Henning 51:18 – 52:10]. Finally, although HSBC handled two disputes from two different credit reporting agencies regarding the identical account within a week of each other, HSBC made absolutely no attempt to co-ordinate those disputes in any manner, and thus reported wildly different information in response to each dispute. [Henning 55:5 – 58:15]. This cursory review of the disputed account is very similar to the reinvestigations described in *Johnson*. "They did not look beyond the information contained in the CIS and never consult underlying documents such as account applications. Based on this evidence, a jury could reasonably conclude that MBNA acted unreasonably in failing to verify the accuracy of the information contained in the CIS." *Johnson,* 357 F.3d at 431. Likewise, a jury in the present case could reasonably conclude that HSBC's reinvestigation in this case fell short of the requirement of section 1681s-(2)(b).

D.  HSBC Violated Section 1681s-2(b)(1)(D) by Failing to Report the Results of the Equifax Investigation to All Other Consumer Reporting Agencies

Moreover, HSBC in fact committed a clear violation of the FCRA when it failed to forward the results of its reinvestigation of the Equifax dispute to Experian. Section 1681s-2(b)(1)(D) provides that "if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which there person furnished the information and that compile and maintain files on consumers on a nationwide basis." Accordingly, after HSBC

determined that it was reporting inaccurate information to Equifax,[2] it was required by the FCRA to report the results of that dispute to Experian.  It failed to do so – and in fact it is HSBC's policy that it never forwarded such results to the other credit reporting agencies.

Q:  Okay.  Did you notify Experian or TransUnion about the changes you were making to the way HSBC was reporting this account to Equifax?

A:  No.

Q:  Okay, did  you ever do that?

A:  When an ACDV comes in from one credit bureau, we do not notify the other two.

Q:  And that's your policy?

A:  Yeah, that's just the way it works.   [Gardiner 140:15 – 141:7].

The requirement to notify all other credit bureaus of the results of a re-investigation is undoubtedly on of the most important obligations the Act places on a furnisher of credit information such as HSBC.  There are three major credit bureaus that furnishers typically report account information to and that potential credit grantors rely upon.  Updating a consumer's account information on only one of the credit reporting agencies while knowingly continuing to report erroneous information to the other agencies makes the entire reinvestigation proves superfluous.  That is especially the case, where, as here, HSBC makes not attempt to co-ordinate its reinvestigations of the same dispute provided to different credit reporting agencies.

HSBC has admitted that it's policy is to ignore one of its most important obligation under the act. Since HSBC has admitted that it maintains a policy to repeatedly violate the FCRA, not only

_____

[2] As described above, in response to the plaintiff's dispute to Equifax, HSBC determined that it had mistakenly informed Equifax that the plaintiff still owed Equifax $8,729 when he in fact did not owe them anything  and also changed the payments status from 120 days past due to 90-119 days past due.

must HSBC's motion be denied, but the plaintiff respectfully argues that he should be awarded partial summary judgment on liability for this blatant violation of the FCRA. [cite authority here].

Perhaps not surprisingly, HSBC's motion for summary judgment wholly ignores this allegation – a fact which alone necessitates the denial of their motion. Accordingly, the plaintiff does not have any knowledge of what HSBC's potential argument on this point is, and respectfully requests the opportunity to response to any such arguments made for the first time in HSBC's reply brief with a sur-reply on this issue only.[3]

### E.   A REASONABLE JURY COULD FIND THAT HSBC WILLFULLY VIOLATED THE FCRA

HSBC's attempts to summarily dismiss the plaintiff's "willful" claims under the FCRA should be denied because HSBC's entire argument is based on the wrong legal standard. The proper standard for willful claims under the FCRA was established by the Supreme Court last year in *Safeco Ins. Co. of America v. Burr*, 127  S.Ct., 2201, 2215-16 (2007). HSBC's motion completely ignores this decision and instead relies upon prior cases which held that "deliberate and purposeful" actions evidencing a "conscious disregard" is necessary to prove a willful claim under the FCRA. The *Safeco* decision rejected those standards by holding that "willful failure [under the FCRA] covers a violation committed in reckless disregard" for the FCRA's requirements. *Id*. at 2203. "[Defendants] argue that liability under section 1681n(a) for 'willfully failing to comply' with FCRA goes only to acts known to violate the Act, not to reckless disregard of statutory duty, but we think they are

---

[3] Any argument that HSBC complied with this section because E-OSCAR automatically carbon copied Experian a copy of the Equifax reinvestigation results must fail because the statute required HSBC to directly report those results to Experian. In fact, Experian's testimony was that it essentially ignored the E-OSCAR notification because it was contrary to the information that HSBC had just directly supplied to Experian. Experian further testified that if HSBC had directly provided them with the results of the Equifax reinvestigation, they would in fact have updated the subject tradeline to conform with those results. [Hughes 71:17 – 79:21; 107:20 – 108:13]

wrong.." *Id.* at 2208. "This standard civil usage thou counsels reading section 1681n(a)'s phrase "willfully fails to comply" as reaching reckless FCRA violations . . . " *Id.* at 2203.

Accordingly, since HSBC's entire argument here is based on the wrong standard it must be disregarded.  Moreover, a jury could easily find that HSBC's conduct in this case was done with a reckless disregard for its obligations to comply with the FCRA.  As explained above, HSBC had a deliberate *knowing* policy of failing to notify all three consumer reporting agencies when it updated a disputed account to one of the other agencies in clear violation of section 1681s92(b)(1)(D).  Furthermore, HSBC's half-hearted reinvestigation of the plaintiff's dispute, which did not even include a review of the plaintiff's Deed in Lieu of Foreclosure or other relevant documents, could also easily be determined to be in "reckless disregard" of their obligation to conduct a reasonable investigation in response to the plaintiff's dispute.  Accordingly, HSBC's request to dismiss the plaintiff's willful claims under the FCRA must be denied.

F.  <u>TRIABLE ISSUES OF FACT EXIST REGARDING THE PLAINTIFF'S DAMAGES</u>

HSBC argues that "it is pure speculation by Plaintiff or his expert that any specific reporting caused any denial," and ask the court to summarily dismiss the plaintiff's claims on this basis.  Since the damages issue was also raised by Experian, and the issues are essentially identical, the plaintiff has consolidated his response to these arguments in Section III A below.

G.  <u>THE PLAINTIFF DOES NOT OPPOSE DISMISSAL HIS DEFAMATION CLAIMS AGAINST BOTH DEFENDANTS</u>

While the plaintiff vigorously disputes the numerous arguments put forth by both defendants regarding his defamation claims, because the relief available under those claims is largely similar to the relief available under the FCRA, the plaintiff will not oppose the dismissal of his FCRA claims in order to save further resources of the Court and counsel.

14

## III. A REASONABLE JURY COULD FIND THAT EXPERIAN VIOLATED THE FCRA

### A.  A REASONABLE JURY COULD FIND THAT THE PLAINTIFF'S WAS DAMAGED BY THE DEFENDANTS' INACCURATE REPORTING OF THE SUBJECT ACCOUNT

1.  The Plaintiff Suffered Economic Damages as a Result of the Inaccurate Reporting of the Subject Account

Defendants' arguments that the plaintiff has not suffered any economic damages as a result of their respective violations of the FCRA is simply wrong.  Had the defendants complied with their obligation under the FCRA the subject account – while still being reported in a derogatory manner – would have been far less damaging than in the manner which it was reported by Experian. Specifically, instead of reporting that the plaintiff had been 90 days late and defaulted on a mortgage four years prior to the subject credit report (and had no current outstanding obligation on the account), Experian and HSBC reported that the plaintiff was currently 180 days late on the subject account, had defaulted on the mortgage only one month prior to the report and still owed nearly $9,000 to HSBC.

Since recent defaults are treated much more harshly than older defaults in the credit industry, this erroneous reporting was the sole reason why the plaintiff was rejected for a mortgage by three different lenders in September 2007.  Experian incorrectly argues that the plaintiff must prove that "but for" the erroneous account, he would not have been denied for the three mortgage applications. That is not the correct standard for proving FCRA damages however, as plaintiff need merely show that the erroneous reporting was a "substantial factor" in his denial of credit.  As stated by the Third Circuit in *Philbin v. TransUnion*, 101 F.3d 957, 969:

> We note also that the district court's language might be understood as imposing a burden on a FCRA plaintiff of proving that the inaccurate information was the *sole* cause of the denial of credit. We reject such a view as inconsistent with traditional notions of tort law and the reality of human decision-making. While a plaintiff must prove that the inaccurate entry was "a substantial factor in bringing about" the denial of credit, RESTATEMENT (SECOND) OF TORT§ 431(a), he need not eliminate the possibility that "correct adverse entries or any other factors," *Pendleton v. TransUnion*, 76 F.R.D. 192, 195, also entered into the decision to deny credit. *See Cahlin v. GMAC*, 936 F.2d 1151, 1161 (1991 11th Cir) ("plaintiff "bears the burden of

proving that [defendant's] credit report was *a causal factor* in the denial of" credit) (emphasis added);  *Stewart v. Credit Bureau, Inc.* 734 F.2d 47, 54 (1984 C.A.D.C.) ("[A] trier of fact could reasonably conclude that [defendant] denied [plaintiff] membership *at least in part* because of the adverse credit report, and summary judgment was inappropriate.") (emphasis added); *see also* PROSSER & KEETON § 41, at 268 ("If the defendant's conduct was a substantial factor in causing the plaintiff's injury, it follows that he will not be absolved from liability merely because other causes have contributed to the result....").

As the Third Circuit went on to explain, "[f]orcing a plaintiff affirmatively to rule out other explanations for the credit denial ignores the fact that decisions to deny credit will frequently have more than one cause. For example, in some instances the inaccurate entry and another factor may each, considered separately, be insufficient to have caused the denial of credit but when taken together are sufficient." *Id.*  And, finally, "[c]ourts have recognized that where a decision-making process implicates a wide range of considerations, all of which factor into the ultimate decision, it is inappropriate to saddle a plaintiff with the burden of proving that one of those factors was *the* cause of the decision." *Id.*

Thus, while plaintiff may in fact be likely to prove "but for" causation at trial, for the purposes of this motion there is do doubt that the error was a "substantial factor" in the denial for his three mortgages.  First, each of the lenders told the plaintiff that federal guidelines prohibited him from obtaining a federally guaranteed mortgage because he had a prior serious mortgage delinquency within three years of his application.  [Gorman Decl. ¶ 20].  Next, while Experian goes to great lengths to portray Mr. Gorman as a deadbeat, the reality is that the subject account was the *only* serious delinquency on his credit reports in January 2007.  The rest of the negative items they refer to were all minor late payments on accounts in good standing – the kind of minor imperfections that exist on the vast majority of consumer credit reports.

The plaintiff has additionally obtained the assistance of an credit expert who has opined in his expert report that the erroneous reporting of the subject account damages the plaintiff's credit scores

by 40-60 points and "as a result he was turned down by conventional mortgage lenders." [Tarter Report, pp. 9 and 12]. Finally, once this derogatory account was removed from the plaintiff's credit reports[4] he was in fact approved for a home mortgage in August 2007. [Gorman Decl ¶ 23]. Contrary to defendant's assertions that this subsequent mortgage approval negates the plaintiff's damage claims, the plaintiff's credit expert has stated that the eight month delay in approval will cost the plaintiff up to $16,446.60. [Tarter Report at p. 13]. Accordingly, a reasonable jury could easily find that the plaintiff suffered economic hard as a result of the defendants violations of the FCRA.

   2.   The Plaintiff Suffered Emotional Harm as a Result of the Inaccurate Reporting of the
        Subject Account

   Due to the fact that the plaintiff has shown actual economic damages, Experian's argument that the plaintiff has not sufficiently proven his emotional distress claims is moot. However, assuming arguendo that those claims were relevant at this stage, they are also mistaken. Experian argues that plaintiff cannot recover for his emotional distress damages because he relies solely on his own testimony to prove those damages.

   The Second Circuit has held that "the plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress *or the objective circumstances of the violation itself.*" *Patrolmen Benevolent Ass'n v. City of New York*, 310 F.3d 43, 56 (2002 2nd Cir) (emphasis added). In this case, the object circumstances of the nature of plaintiff's claim sufficiently support the plaintiff's allegations of emotional harm. Here, after attempting for years to remove erroneous information on his credit report, the plaintiff was denied a mortgage on three occasions and his five member family was forced

---

[4] Which occurred not coincidentally shortly after the defendants were served with notice of this lawsuit.

to continue to reside in a rented one-bedroom apartment.  A reasonable jury could find that those circumstances objectively support the plaintiff's testimony that he suffered emotional damages.

In fact, other courts have specifically held that a mortgage denial objectively supported an emotional distress claim.  "An injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements.  In this case, [the plaintiff] testified to the fact that the denial of her second mortgage application, which would have enabled her to purchase the condominium adjacent to her residence and there have her granddaughter easily care for her, made her feel 'desperate,' 'ashamed,' 'embarrassed,' and 'damn mad.' . . . As a result, [plaintiff] presented sufficient evidence from which the jury could reasonably conclude that [she] was entitled to actual damages n the form of pain and suffering." *Bach v. First Union National Bank*, 149 Fed.Appx. 354, 361-62 (2005 6th Cir).  Accordingly, no basis exists for summarily dismissing the plaintiff's FCRA claims for a lack of actual damages.

B.  <u>THE PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE FCRA'S STATUE OF LIMITATIONS</u>

Experian's argument that the plaintiff's FCRA claims are barred by the statute of limitations is absolutely meritless, and is quite frankly not made in good faith.  The FCRA provides that all claims for a violation of the Act must be brought within "two years after the date of discovery by the plaintiff of the violation that is the basis for liability." 15 USC § 1681p(1).  The plaintiff's alleges that Experian violated the FCRA when it failed to conduct a reasonable reinvestigation of his dispute on September 20, 2006.  This action was filed on March 2, 2007 – less than six months after the alleged violation occurred.

Experian makes the novel argument that because the plaintiff had previously disputed it's reporting of the subject account as far back in 2003 it cannot be held liable for it's alleged failure to adequately reinvestigate the account in 2006.  That arguments lacks any support in either law or

18

logic.  Not surprisingly, Experian fails to cite a *single FCRA decision* in support of its argument – and it would be impossible to do so because no such cases exist.  Instead, every single court to consider a similar argument under the FCRA has rejected it – including the Court of Appeals.  "We adopt the Restatement's formulation and conclude that each transmission of the same credit report is a distinct tort to which a separate statute of limitations applies."  *Hyde v. Hibernia National Bank*, 861 F.2d 446, 450 (1988 5th Cir.).  Accord *Lawrence v. TransUnion, LLC*, 296 F.Supp 2d 582, 587 (2003 E.D. Pa.); *Whitesides v. Equifax Credit Information Services, Inc.*, 125 F.Suppp. 813, 817 (2000 W.D. La).  The argument is further rebutted by the actual language of the statue, which expressly provides that the limitations period begins when the plaintiff discovers "the violation that is the basis for such liability" – which clearly contemplates separate limitation periods for separate violations of the Act.

Experian's argument also fails from a publicly policy standpoint, since if accepted it would merely encourage consumers to sue credit bureaus at the first sign of a dispute instead of continuing to try and informally work with the bureaus to correct inaccurate information without resorting to litigation.  Such a result would only increase the burden on the courts while at the same time punishing consumers like Mr. Gorman for repeatedly attempting to work *with* the credit bureaus instead of immediately suing them at the first sign of trouble.

## C.   A REASONABLE JURY COULD FIND THAT EXPERIAN BOTH NEGLIGENTLY AND WILLFULLY VIOLATED THE FCRA

Courts interpreting 15 U.S.C. §1681i(a) have imposed upon credit reporting agencies a duty to conduct a "reasonable" investigation. Cushman v. Trans Union Corp., 115 F.3d 220, 224-25 (3rd Cir. 1997); Henson, 29 F.2d at 286-87; Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160 (11th Cir. 1991); Pinner v. Schmidt, 805 F.2d 1258, 1262 (5th Cir. 1986).  Factors to be considered in determining whether a credit reporting agency has conducted a reasonable investigation include whether the consumer has alerted the investigating entity that the initial source of its information may be unreliable, and the cost of verifying the accuracy of the source versus the possible harm of reporting inaccurate information. Bruce, 103 F.Supp.2d at 1143 citing Cushman, 115 F.3d at 225 and

Henson, 29 F.3d at 287.  "The grave responsibility imposed by section 1681i(a) must consist of something more than merely parroting information received from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligation contemplated by the statute." *Cushman*, 115 F.3d at 220.

Therefore the credit reporting agency cannot merely "parrot" the results of the furnishers reinvestigation, but instead must conduct it's own independent reinvestigation.  Yet that is precisely what Experian did in this case, where it freely admits that it did absolutely not independent reinvestigation of its own – and instead merely relied upon HSBC to reinvestigate the disputed account.

Q:  Okay. So Experian essentially relies upon HSBC to reinvestigate this matter and then report those results, correct?

A:  That's correct.

Q:  Okay.  It doesn't conduct its own reinvestigation into this dispute?

A:  Well, we do go to the reporting source which is the company who had the relationship with the subscriber, but independent of that and reviewing any information sent in by the consumer themselves, we don't do any other independent investigations.

[Hughes 110:6 – 111:21].

Furthermore, an "investigation" must include a review and reliance upon original documents.  "In conducting any reinvestigation under paragraph (1) with respect to information in the file of ay consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer . . ." 15 USC § 1681 (a)(4).  Experian violated this obligation by refusing to consider the plaintiff's documents.  See Gorman Declaration, ¶ 12, [Browne 65:20 – 67:23].

Those are not the only obligations under section 1681i that Experian has a long standing policy of ignoring.  The FCRA also requires credit reporting agencies to forward "all relevant information regarding the dispute that the agency has received from the consumer or the reseller." 15

USC § 1681i(a)(2)(A).  Experian blatantly failed to comply with this section by refusing to forward both the plaintiff's actual dispute letter and his documents to HSBC.  [See Hughes 32:5 – 33:2; 34:14 – 34: 23].

Further, nothing in *Podell v. Citicorp Diners Club Inc.*, 112 F.3d 98 (2nd Cir 1997) supports Experian's argument. "As the consumer in *Podell* never took issue with the reasonableness of the scope of the consumer reporting agency's reinvestigation, the Court of Appeals for the Second Circuit had no occasion to address this issue." *Cushman,* 115 F.3d at 225.

Accordingly, since Experian unabashedly refused to review the plaintiff's documents, refused to forward the plaintiff's dispute letter to HSBC, refused to forward the plaintiff's documents to HSBC , refused to conduct any independent reinvestigation of the plaintiff's dispute and instead merely "parroted" the results of HSBC's investigation, a reasonable jury could find not only that Experian negligently failed to comply with its obligations under the FCRA, but this its conduct equaled a "reckless disregard" for its obligations under the Act as well.  Accordingly, Experian's attempts to summarily adjudicate this issue should be denied.

**CONCLUSION**

The Plaintiff has established the Defendants' respective liability under both sections 1681i and 1681 s-2(b). At worst, there would remain a jury question. Accordingly, the plaintiff prays the Court to deny Defendants' Motion for Summary Judgment and for such other relief the Court finds just and proper.

Dated: June 5, 2008

Respectfully Submitted,

Kévin Mallon
FISHMAN & NEIL, LLP
305 Broadway, Suite 900
New York, NY 10007
(212) 897-5840
*Attorneys for Plaintiff Robert Gorman*

22