UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ROBERT GORMAN,

                            Plaintiff                      07 CV 1846 (RPP)
            - against -

                                                 **OPINION AND ORDER**

EXPERIAN INFORMATION SOLUTIONS, INC.,
EQUIFAX INFORMATION SERVICES, INC.,
and HSBC MORTGAGE SERVICES, INC.

                            Defendants.
-----------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**


      On March 2, 2002, Plaintiff Robert Gorman ("Plaintiff") initiated this action

against Experian Information Solutions, Inc. ("Experian"), Equifax Information Services,

Inc. ("Equifax"), and HSBC Mortgage Services, Inc. ("HSBC") for actual and punitive

damages arising out of alleged violations of the Fair Credit Reporting Act ("FCRA"), 15

U.S.C. § 1681 *et seq.*, and for defamation.[1]  Plaintiff settled its claims against Equifax,

and they were dismissed by stipulation on February 27, 2008 after the close of discovery

on January 30, 2008.  Experian and HSBC (collectively, "Defendants") now move for

summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that

follow, Experian's motion is granted in part and denied in part.  HSBC's motion is

granted in its entirety.

---

[1] Plaintiff consents to dismissal of the defamation claims against both parties (Pl.'s Mem. of Law
in Opp. to Defs.' Mots. for Summ. J. 14).  Plaintiff's claims under 15 U.S.C. §§ 1681b(f), 1681q against
HSBC were dismissed with prejudice by stipulation on May 14, 2008.

I.  BACKGROUND

During November 2000, Plaintiff obtained two mortgages from HSBC's predecessor-in-interest (hereinafter "HSBC") in the amounts of $360,000 and $90,000 for a condominium he purchased in Northern California.  (Zarlock Decl., Ex. J, Def. Ex. C, D).  In October 2001, Plaintiff was released from his job and was unable to make further mortgage payments after his January 2002 payment.  (HSBC's Local Civ. Rule 56.1 Stmt., ¶¶ 10-12.)  As a result of his inability to make payments, on April 30, 2002, Plaintiff executed a Grant Deed in Lieu of Foreclosure as well as an estoppel affidavit for the first loan for the repossession of the property.  (Gorman Decl., Ex. A at 5-8.)  Plaintiff signed the estoppel affidavit for the second loan on June 6, 2002.  (Zarlock Decl., Ex. J, Def. Ex. G at 4-5.)  On June 11, 2002, Plaintiff executed a Deed of Reconveyance, which was recorded by the San Francisco County Assessor-Recorder's Office, along with the Grant Deed in Lieu of Foreclosure and the estoppel affidavits, on June 26, 2002.[2] (Gorman Decl., Ex. A.)  Plaintiff acknowledges that he did not make mortgage payments or pay rent while residing on the property from January through June 2002.  (Pl.'s Resp. to HSBC's Local Civ. Rule 56.1 Stmt. ¶ 18.)

A.  The Experian Credit Report

On July 19, 2006, Plaintiff obtained a copy of his credit report from Experian.  (Gorman Decl., Ex. B.)  The report contained five negative items, including the fact that Plaintiff was 30 days or more delinquent on payment of at least one student loan account in 2002, 2003, 2004, and 2006, and 30 days or more delinquent on payment of an

---

[2] The record does not reflect when these documents were received by HSBC.

automobile loan in 2000.  (Experian's Local Civ. Rule 56.1 Stmt. ¶¶ 17-21).  The July 19,

2006 Experian report did not report the $360,000 HSBC loan, only the $90,000 HSBC

loan (hereinafter "Mortgage Loan").  The July 19, 2006 Experian report's entry for the

Mortgage Loan read:

> Status: Creditor received deed/Foreclosure proceedings started. $8,702
> past due as of Oct 2002. Account history: Creditor received deed as of Oct
> 2002. Foreclosure proceedings started as of Sep 2002, Aug 2002, June
> 2002, 120 days as of May 2002, 90 days as of Apr 2002, 30 days as of
> Mar 2002.

(Gorman Decl., Ex. B.)  On August 31, 2006, Plaintiff sent a letter, dispute form, and a

copy of the Grant Deed in Lieu of Foreclosure to Experian.  (<u>Id.</u>, Ex. C.)  Plaintiff's letter

referenced requirements under the FCPA and requested that Experian examine the

attached dispute form and Grant Deed in Lieu of Foreclosure.  With regard to the

Mortgage Loan, the attached dispute form stated, "Account was closed by deed transfer

on April 2002 (see attached legal document).  No foreclosure was done, mortgage fully

closed on April 2002, so entries after (and on) that date are wholly incorrect…"  (<u>Id.</u>)

Experian's investigation results dated September 8, 2006 acknowledged to Plaintiff that

Experian had received Plaintiff's dispute information and was "not able to use it," but

that it would continue its verification process and respond to Plaintiff within 45 days.

(<u>Id.</u>, Ex. D.)

Experian uses an automated consumer dispute verification ("ACDV") electronic

system to submit verification requests to creditors like HSBC.  (HSBC's Local Civ. Rule

56.1 Stmt. ¶ 24.)  Credit reporting agencies like Experian and Equifax review the

information from a consumer's dispute and send an ACDV to the creditor (here, HSBC)

over a system called the E-OSCAR system.  (<u>Id.</u> ¶ 25.)  The documents that credit

reporting agencies receive from the consumer are not sent to HSBC.  (Id. ¶ 26.)  The ACDV form contains areas for the credit reporting agencies to provide information describing the consumer's dispute.  (Id. ¶ 27.)

On September 8, 2006, Experian sent an ACDV to HSBC concerning Plaintiff's dispute of the Mortgage Loan; it did not send Plaintiff's letter or dispute form to HSBC. (Zarlock Decl., Ex. K, Pl. Ex. 29/31, at 3.)  The Experian ACDV stated: "Disputes present/previous Account Status, History.  Verify accordingly.  CONSUMER SENT IN DEED IN LIEU OF FORECLOSURE."[3]  (Id.)  An HSBC investigator, LaQuinta Henning, reviewed the Experian ACDV and reviewed the available account information in light of the ACDV.  (Id.; Henning Dep. 17:11 – 23:14.)    After receipt of the Experian ACDV, HSBC filled in the form's response on September 11, 2006 to reflect a "closed date" of 5/08/02.  (Id.)

On October 6, 2006, Experian issued an updated report, which contained the following entry for the Mortgage Loan:

> Status: Creditor received deed/Past due 180 days. $8,702 past due as of Sep 2006. Account history: Creditor received deed as of Sep 2006, 180 days as of Sep 2002, Aug 2002, 120 days as of Jun 2002, 90 days as of May 2002, 60 days as of Apr 2002, 30 days as of Mar 2002. This account is scheduled to continue on record until Dec. 2008.

(Gorman Decl., Ex. E.)  The updated report did not reflect the closed date of 5/08/02.

---

[3] The ACDV did not incorporate Plaintiff's statements from his dispute form: "Account was closed by deed transfer on April 2002…No foreclosure was done, mortgage fully closed on April 2002, so entries after (and on) that date are wholly incorrect…"  (Gorman Decl. Ex. C.)

B.  The Equifax Credit Report

On July 20, 2006, Plaintiff received a copy of his credit report from Equifax. (Gorman Decl., Ex. F.)  The Equifax credit report reflected the HSBC Mortgage Loan as having a "Balance Amount" of $5,980, a "Past Due Amount" of $8,729, and "Date of Last Payment" as 1/2002.  It states: "Current Status – Over 120 days past due."  (Id.)  On August 31, 2006, Plaintiff sent a dispute letter to Equifax regarding the reporting of the Mortgage Loan.  (Gorman Decl., Ex. G.)

On September 8, 2006, Equifax sent an ACDV to HSBC concerning Plaintiff's letter and the Mortgage Loan.  (Zarlock Decl., Ex. K, Pl. Ex. 4.)  The Equifax ACDV told HSBC that the dispute reason was:

> Disputes current/previous account status/payment history profile/payment rating, verify payment history profile, account status, and payment rate.  Claims account closed.  Provide account status, date closed, and payment rating.  Consumer states that this was closed on April 30, 2006 [*sic*] when deed was transferred to lender and status incorrect.

(Id.)

In response to the Equifax ACDV, HSBC requested that Equifax modify the Mortgage Loan reporting to reflect a $0 balance, delinquency of "90-119 days past due," and "Deed received in lieu of foreclosure on a defaulted mortgage."  (Id.)  When HSBC responded to the Equifax ACDV on September 19, 2006, which was two weeks prior to Experian's issuance of its revised October 6, 2006 credit report, it sent a copy of the updated information to Experian through E-OSCAR.  (Zarlock Decl., Ex. K, Pl. Ex. 29/31 at 4-6.)

C. Plaintiff's Alleged Damages

Plaintiff alleges that, based on his credit report, three different mortgage companies denied him loans in January 2007, and as a result, he was unable to purchase and move into a house from his apartment. (Gorman Decl. ¶¶ 19, 21.) Plaintiff further alleges that after the filing of this lawsuit, HSBC instructed Experian to remove the alleged erroneous information from his credit report, and he was subsequently able to obtain a mortgage and move his family to a new home in Virginia in August 2007. (Id. ¶ 23). Plaintiff alleges that he would have been able to obtain a more favorable home mortgage in January 2007, and that the denial of his mortgage application cost him an estimated $16,000 in less favorable terms. (Id.) In addition, Plaintiff alleges emotional and other damages as a result of the mortgage denials, though he has never sought any medical treatment, psychiatric treatment, or counseling. (Id. ¶ 22; Gorman Dep. 123:13-124:7.)


II. STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Fed. R. Civ. P. 56(e). When determining whether a genuine issue of material fact exists, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Braham v. Clancy, 425 F.3d 177, 181 (2d Cir. 2005) (internal citations

omitted).  The non-moving party, however, "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful."  Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations omitted).  Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

III.  DISCUSSION

    A.  Legislative Purpose of the FCRA

    The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer..."  15 U.S.C. § 1681(b).  Specifically, the FCRA requires that consumer reporting agencies, such as Experian, "follow reasonable procedures to assure maximum possible accuracy of the information" contained in the consumer report.[4]  15 U.S.C. § 1681e(b).  When the accuracy of a report is in dispute, Section 1681i outlines specific procedures that consumer reporting agencies must follow to ensure the proper reinvestigation of disputed information.  See 15 U.S.C. § 1681i.

    Section 1681s-2(b) of the FCRA addresses duties of furnishers of information, such as HSBC, once they receive notice of "a dispute with regard to the completeness or

---

[4] Experian is a "consumer reporting agency" within the meaning of the FCRA.  15 U.S.C. § 1681a(f).  HSBC is a "furnisher of information" within the meaning of the FCRA.  15 U.S.C. § 1681s-2.

accuracy or any information provided by a person to a consumer reporting agency." Upon receiving that notice, furnishers of information must conduct an investigation on the disputed information, review all information provided by the consumer reporting agency, and then report any inaccuracies to all consumer reporting agencies to which the furnishers provide information.  15 U.S.C. § 1681s-2(b)(1).

Under the FCRA, the consumer reporting agency or furnisher of information is liable to the consumer for negligent or willful non-compliance in an amount equal to the "actual damages" sustained, the costs of the action and reasonable attorney's fees, as well as punitive damages in the case of willful noncompliance.  15 U.S.C. §§ 1681n, 1681o.

B.  Claims against Experian

Plaintiff brings claims for both negligent and willful violations of sections 1681e(b) and 1681i of the FCRA.  In order to succeed on a claim under section 1681e(b), a plaintiff must show that:

> (1) the consumer reporting agency was negligent [or willful] in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.

Whelan v. Trans Union Credit Reporting Agency, 862 F.Supp. 824, 829 (E.D.N.Y. 1994) (citing Houston v. TRW Info. Servs., Inc., 1989 WL 59850 (S.D.N.Y. May 2, 1989), aff'd, 896 F.2d 543 (2d Cir. 1990)).  "[T]he threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary."  Houston v. TRW Info. Servs., Inc., 707 F. Supp. 689, 691 (S.D.N.Y. 1989); see also Dalton v.

Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001).  If the information is inaccurate, plaintiff must then present some evidence that the credit reporting agency failed to follow reasonable procedures, as mandated by the statute in sections 1681e(b) and 1681i.  Whelan, 862 F.Supp. at 829.  Whether or not the credit reporting agency followed reasonable procedures "will be a jury question in the overwhelming majority of cases."  Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991).

### 1.  Accuracy of Report and Reasonable Procedures

It is undisputed that Plaintiff signed the Grant Deed in Lieu of Foreclosure on April 30, 2002 (Gorman Decl., Ex. A.), and the San Francisco County Assessor-Recorder's Office received and stamped the Grant Deed in Lieu of Foreclosure on June 26, 2002.  (Id.)  After receiving the Experian credit report dated July 19, 2006, which contained information about the HSBC Mortgage Loan of $90,000, Plaintiff notified Experian that the credit report was not accurate.  (Gorman Decl. Ex. B.)  The July 19, 2006 credit report states: (1) "Foreclosure proceedings started"; (2) $8,702 past due as of October 2002; and (3) "Creditor received deed as of October 2002" when the Grant Deed in Lieu of Foreclosure was signed on April 30, 2002 and recorded as of June 26, 2002. (Gorman Decl., Ex. B at 2.)

In response to Plaintiff disputing the accuracy of the report, Experian sent an ACDV to HSBC.  HSBC responded to the ACDV on September 11, 2006 by noting that the Mortgage Loan account was closed on May 8, 2002.  (Zarlock Decl., Ex. K, Pl. Ex. 29/31.)  Experian used the information it received from HSBC to issue a revised credit

report on October 6, 2006, which included the following updated entry for the HSBC

Mortgage Loan:

> Status: Creditor received deed/Past due 180 days. $8,702 past due as of
> Sep. 2006. Account history: Creditor received deed as of Sep 2006, 180
> days as of Sep 2002, Aug 2002, 120 days as of Jun 2002, 90 days as of
> May 2002, 60 days as of Apr 2002, 30 days as of Mar 2002. This account
> is scheduled to continue on record until Dec. 2008.

(Gorman Decl., Ex. E, at 4.)  While the October 6, 2006 credit report omits the previous

entry of "foreclosure proceedings," it states $8,702 past due as of September 2006 and

that the Creditor received the Grant Deed, not as of April or June 2002, but as of

September 2006.  Due to the discrepancy between these dates and the dates of the Grant

Deed in Lieu of Foreclosure and associated documents, a jury could conclude that on

October 6, 2006, Experian reported inaccurate information as to the Mortgage Loan.  A

jury could also conclude that Experian did not accurately report the information it

received from HSBC.

     In addition, a genuine issue of material fact exists as to whether Experian failed to

follow reasonable procedures as required by sections 1681e(b) and 1681i.[5]  On August

31, 2006, Plaintiff sent a copy of his Grant Deed in Lieu of Foreclosure, as well as a

detailed letter explaining the inaccuracies, to Experian in connection with its

investigation.  (Gorman Decl. ¶11; id. Ex. C; Gorman Dep. at 98.)  Experian contends

---

[5] Experian cites Podell v. Citicorp Diners Club, Inc. to support its claim that Plaintiff has "failed
to demonstrate a genuine material question regarding [Experian's] compliance with the reinvestigation
procedures of FCRA."  112 F.3d 98, 104 (2d Cir. 1997).  However, the facts are distinguishable in that the
sole issue in Podell was whether notice was sent as required by section 1681i.  Id. at 101.  As the Court of
Appeals for the Third Circuit recognized in Cushman v. TransUnion Corp., "[a]s the consumer in Podell
never took issue with the reasonableness of the scope of the consumer reporting agency's reinvestigation,
the Court of Appeals for the Second Circuit had no occasion to address this issue."  115 F.3d 220, 224-25
(3rd Cir. 1997).  Here, whether Experian's procedures were reasonable presents a genuine issue of material
fact.

that, because they sent an ACDV to HSBC in order to verify the information, and they accurately reported the information they received from HSBC, there is no genuine issue of material fact before the Court.  (Experian Reply at 9-10.)  Two federal circuits have held, however, that the reinvestigation required by section 1681i(a) demands more than (a) forwarding the dispute information onto the furnisher of information and (b) relying on the furnisher of information's response.  See Cushman v. TransUnion Corp., 115 F.3d 220, 225 (3rd Cir. 1997) (holding that "in order to fulfill its obligation under section 1681i(a) 'a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information.'" (quoting Henson v. CSC Credit Servs., 29 F.3d 280, 287 (7th Cir. 1994)); see also Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993) ("In a reinvestigation of the accuracy of credit reports [pursuant to § 1681i(a)], a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers.").  The court in Cushman noted that to only require the credit reporting agency to go to the furnisher of information would replicate the requirements of section 1681e(b), and such a reading would render the two sections largely duplicative of each other.  Id.  Receiving notification of a dispute from a customer shifts the responsibility of reinvestigation onto the credit reporting agency, and the statutory responsibility imposed on the credit report agency "must consist of something more than merely parroting information received from other sources."  Id.

Here, an Experian representative stated that Experian does not conduct an independent reinvestigation:

Q:  Okay.  So Experian essentially relies upon HSBC to reinvestigate this matter and then report those results, correct?

11

A:  That's correct.

Q:  Okay.  It doesn't conduct is own reinvestigation into this dispute?

A:  Well, we do go to the reporting source which is the company who had the relationship with the subscriber, but independent of that and reviewing any information sent in by the consumer themselves, we don't do any other independent investigations.

(Hughes Dep. at 110-111.)

Given the standard articulated in Cushman and Experian's claimed sole reliance on the information it received from HSBC, a jury could conclude that Experian did not reinvestigate Plaintiff's dispute in accordance with the requirements of 15 U.S.C. § 1681.

### 2. Causation of "Actual Damages"

Although a jury could find that Experian violated its duties under the FCRA, Plaintiff has not presented sufficient evidence of causation of "actual damages" to survive summary judgment.  See Cahlin, 936 F.2d at 1161 (emphasizing that plaintiff has an affirmative duty to present evidence supporting his claim that the alleged inaccurate report caused him damage).  A plaintiff must produce evidence from which a reasonable trier of fact could infer that the inaccurate entry was a "substantial factor" that brought about the denial of credit. [6]  See Philbin v. Trans Union Corp., 101 F.3d 957, 969 (3d Cir.

---

[6]  Experian cites Safeco Ins. Co. of America v. Burr in support of its argument that Plaintiff must show "but-for" causation.  127 S.Ct. 2201, 2212 (2007).  That holding was based on an entirely different provision of the FCRA than the statutes at issue here.  See 15 U.S.C. § 1681m(a) (requiring that users of consumer reports who take "any adverse action…based in whole or in part on any information contained in the consumer report" notify the consumer).  The Supreme Court's analysis closely followed the language of that provision of the FCRA and found that the plain meaning of "based on" required "but-for" causation.  The language of the statute at issue in Safeco does not mirror the language of the statutes at issue here.  See 15 U.S.C. §§ 1681e(b), 1681i, or 1681s-2.  However, it is not necessary to decide whether the more

1996).  In short, the inaccuracy in the credit report must proximately cause actual damages to plaintiff.  Whelan, 862 F.Supp. at 829 (citations omitted).

Plaintiff alleges that the inaccurate information regarding the HSBC mortgage contained on the Experian report caused three lenders to deny his applications for mortgages in January 2007.[7]  (Gorman Decl. ¶¶ 19, 20.)  However, Plaintiff failed to take discovery from any of the third-party lenders who allegedly denied the loans and has failed to present evidence showing that (1) the lenders relied on the Experian report; and (2) the inaccurate information regarding the HSBC Mortgage Loan was a substantial factor in the lenders' denial of the loans.

The only documents Plaintiff submits in support of this causation allegation lack the foundation to be admissible for the truth of their contents under Rule 56(c) of the Federal Rules of Civil Procedure or Local Rule 56.1.  Nevertheless, even if the hearsay documents were admissible, they are not sufficient evidence of causation to survive summary judgment.  An examination of each document shows it contains no evidence that Experian's report caused the lenders to deny his applications for a mortgage.

> (1) United Community Bank Mortgage Services Letter to Gorman, dated January 31, 2007.  (Gorman Decl., Ex. J at 1.)  This letter states that

---

stringent "but-for" test expands to the sections of the FCRA at issue in this case because Plaintiff fails to satisfy even the "substantial factor" test.

[7] As evidence of actual damages caused by Experian, Plaintiff submits an unsworn expert report which states, in summary, that Plaintiff's damages consist of: (1) $10,964 to $16,446.60 in increased mortgage cost as a result of mortgage loan denials in January 2007; (2) $300,000 due to credit stigma; and (3) additional emotional and/or punitive damages to be determined.  (Mallon Decl., Ex. A at 12-13.) However, this expert report is inadmissible for purposes of summary judgment because the report is unsworn. Fed. R. Civ. P. 56(e); see Berk v. St. Vincent's Hospital and Medical Center, 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005).  At oral argument on Defendants' summary judgment motions, Plaintiff informed the Court that the expert had been deposed and that the deposition would support his report. (Transcript of October 2, 2008 Oral Argument at 65:16-66:8.)  The Court said it would receive and consider a copy of the deposition (id. at 67:24-68:2); however, Plaintiff has not supplied the Court with the transcript despite having adequate time to do so.

United Community Bank denies his application for a first mortgage loan because of "Delinquent past or present credit with others." In the disclosure language, the letter states that their decision was "based in whole or in part on information obtained in a report from the consumer reporting agency listed below." However, no agency is listed. Therefore, nothing on this letter indicates that the lender relied, in part or in whole, on an Experian report, or more specifically on the allegedly inaccurate information contained in the Experian report about the HSBC mortgage loan.

(2)     CredStar Notice to Gorman, dated January 12, 2007. (Gorman Decl., Ex. J at 2-3.) This letter is not a denial of a loan; it is a disclosure of a credit score made in connection with a home loan. The report does list Experian, as well as TransUnion and Equifax, as a credit bureau who may have contributed data for the credit score disclosed in the report. However, because the letter is not a loan denial, it is not evidence that the information about the HSBC loan contained on the Experian report caused a loan denial.

(3)     USAA Federal Savings Bank Statement of Credit Denial to Gorman, dated January 18, 2007. (Gorman Decl., Ex. J at 4.) This document does appear to be a loan denial, and the principal reason for that loan denial listed in Part I of the letter is "Foreclosure or Repossession." However, in Part II of the credit denial, the lender discloses that its credit decision was "based in whole or in part on information obtained

14

in a report from the consumer reporting agency listed below." The agency listed is CSC Credit Services, an affiliate of Equifax. Therefore, because the loan denial states that its credit decision was based in whole or in part on a credit report provided by a different consumer reporting agency, the information regarding the HSBC loan contained on the Experian report has not been shown to have been a substantial factor in the loan denial.

Experian's motion for summary judgment on Plaintiff's claim for compensatory damages is granted because Plaintiff has failed to meet his burden of showing that the alleged inaccurate information on the Experian report caused actual damages, either in the form of out-of-pocket expenses or emotional distress.[8]  See Whelan, 862 F.Supp. at 832 (granting defendant consumer reporting agency summary judgment where plaintiffs failed to show that the inaccurate information on defendant's credit report proximately caused damages); see also Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages'"). Plaintiff's claims for actual damages under sections 1681n and 1681o are dismissed.

### 3.  Punitive Damages

Even if Plaintiff is not entitled to "actual damages," he may still be entitled to punitive damages based on sufficient proof that Experian willfully violated various provisions of the FCRA.  See 15 U.S.C. § 1681n(a)(2); see also Northrop v. Hoffman of

---

[8] "'[A]ctual damages' may include humiliation and mental distress, even in the absence of out-of-pocket expenses."  Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995).

Simsbury, Inc., 12 Fed. Appx. 44, 50 (2d Cir. 2001) ("[a]ctual damages are not a statutory prerequisite to punitive damages" under the FCRA).  The Supreme Court recently held that the proper standard for determining whether or not provisions of the FCRA were "willfully" violated under 1681n(a) includes "reckless disregard" for the FCRA requirements.  Safeco Ins. Co. of America v. Burr, 127 S.Ct. 2201, 2203 (2007).

Given the evidence regarding the accuracy of Experian's report and the reasonableness of their procedures, see Section III.B.1, supra, a jury could find that Experian showed a reckless disregard for the requirements of sections 1681e(b) and 1681i.  Here, in addition to Experian's admission that it failed to conduct any independent investigation of the validity of Plaintiff's Deed in Lieu of Foreclosure, Experian failed to consider an E-OSCAR notification from HSBC that contained updated information regarding the Mortgage Loan.  Within seven days of the direct response from HSBC, and prior to issuance of the revised October 6, 2006 credit report, Experian received a copied notification from HSBC through E-OSCAR, which contained updated and corrected information that HSBC provided Equifax.  (Hughes Dep. at 72-74.)  Experian did not use this information to update its credit report due to an Experian policy not to consider information received within thirty days of a direct response from the furnisher.  (Id. at 76.)  Because of the material differences between the information Experian received within seven days from HSBC about the HSBC mortgage loan, a jury could conclude that Experian recklessly disregarded the new information received from HSBC and that Experian's policy of rejecting information received within thirty days of the direct response it received from the furnisher recklessly disregarded its obligations

under the FCPA.  Therefore, Experian's motion for summary judgment with respect to Plaintiff's claim for punitive damages under 15 U.S.C. § 1681n is denied.

### C.  Claims against HSBC

Plaintiff brings claims against HSBC for both negligent and willful violations of section 1681s-2(b) of the FCRA.[9]  Section 1681s-2(b) provides that when a furnisher of information to a credit reporting agency receives notice of a dispute made by a consumer through the credit reporting agency, the furnisher is required to conduct an investigation with respect to the disputed information.  15 U.S.C. § 1681s-2(b)(1)(A).  The furnisher of information is also required to review all relevant information provided by the consumer to the credit reporting agency.  15 U.S.C. § 1681s-2(b)(1)(B).  It must then report the results of its investigation to the credit reporting agency.  15 U.S.C. § 1681s-2(b)(1)(C).  If the investigation finds that the information is inaccurate or incomplete in any way, it must report those results to all other consumer reporting agencies to which the furnisher provided the information.  15 U.S.C. § 1681s-2(b)(1)(D).

### 1.  Investigation Procedures

On September 8, 2006, Experian sent an ACDV to HSBC notifying HSBC that Plaintiff disputed certain information regarding the HSBC Mortgage Loan.  The Experian ACDV stated: "Disputes present/previous Account Status, History.  Verify accordingly.

---

[9] A consumer has no private right of action under section 1681s-2(a), which requires a furnisher of information to provide accurate information to consumer reporting agencies.  See Elmore v. North Fork Bancorporation, Inc., 325 F.Supp.2d 336, 339 (S.D.N.Y. 2004) (noting that section 1681s-2(d) limits enforcement of subsection 1681s-2(a) to Federal agencies and state officials).  Accordingly, Plaintiff has not claimed a violation of section 1681s-2(a) in the Complaint.

CONSUMER SENT IN DEED IN LIEU OF FORECLOSURE."  (Zarlock Decl., Ex. K, Pl. Ex. 29/31 at 3.) Upon receiving this notice, the HSBC investigator examined the information in the HSBC system and, on September 11, 2006, sent the updated information regarding Plaintiff's HSBC Mortgage Loan account to Experian.  (Henning Dep. at 23, 29-30; HSBC's Local Civ. Rule 56.1 Stmt. ¶44;  Zarlock Decl. Ex. K, Pl. Ex. 29/31 at 3.)  The ADVC response reflected a closed date of 5/08/02. (Zarlock Decl., Ex. K, Pl. Ex. 29/31 at 3.)  However, this closed date was not included in Experian's report dated October 6, 2006.  (Gorman Decl., Ex. E.)

A different HSBC investigator responded to an ACDV request from Equifax regarding the Mortgage Loan (see Gardiner Dep. at 78, 90-91.) and notified Equifax that the Mortgage Loan should reflect a $0 balance, delinquency of 90-119 days past due, and "Deed received in lieu of foreclosure on a defaulted mortgage."  (Zarlock Decl., Ex. K, Pl. Ex. 4.)  When HSBC responded to the Equifax ACDV on September 19, 2006, they sent a copy of the updated information to Experian through E-OSCAR, as required by section 1681s-2(b)(1)(D).  (Zarlock Decl., Ex. K, Pl. 29/31 at 4-6.)

Plaintiff argues that HSBC failed to comply with section 1681s-2(b) because the information it sent to Experian was "wildly different" than the information provided to Equifax.  (Pl. Mem. of Law at 11.)  While it is true that HSBC provided different information regarding the Mortgage Loan in response to dispute requests from Experian and Equifax, those differences may be accounted for by the nature of the dispute descriptions provided by Experian and Equifax.  (See Zarlock Decl., Ex. K, Pl. Ex. 4; id., Pl. Ex. 29/31 at 3.)  Whether or not HSBC complied with the "Duties of furnishers of

information upon notice of dispute" as required by section 1681s-2(b) is therefore an issue of fact to be determined by a jury.

### 2.  Causation of "Actual Damages"

Nevertheless, Plaintiff has failed to show that because HSBC's ACDV response to Experian was different from its ACDV response to Equifax, Plaintiff suffered "actual damages." <u>See</u> 15 U.S.C. §§ 1681n, 1681o.  As with the Experian claims discussed <u>supra</u>, Plaintiff has provided no evidence that any alleged violation of the FCRA by HSBC caused Plaintiff actual damages, either compensatory or emotional.  <u>See</u> Section III.B.2 <u>supra</u>.  In fact, Plaintiff has offered no evidence that the lenders denied his mortgage applications based on any information provided by HSBC, either directly or indirectly. Accordingly, Plaintiff's claims against HSBC for actual damages under sections 1681n and 1681o are dismissed.

### 3.  Punitive Damages

With respect to claims for punitive damages, Plaintiff has failed to set forth any evidence demonstrating that HSBC showed reckless disregard for the FCRA requirements.  <u>See</u> <u>Safeco</u>, 127 S.Ct. at 2203.   Therefore, Plaintiff's claims against HSBC for punitive damages under section 1681n are dismissed.

IV. CONCLUSION

For the foregoing reasons, Experian's motion for summary judgment is granted in part and denied in part, and HSBC's motion for summary judgment is granted in its entirety.


IT IS SO ORDERED.

Dated:  New York, New York
       November _18_, 2008

Robert P. Patterson, Jr.

U.S.D.J.

Copy of this Opinion and Order sent to:

*Counsel for Plaintiff:*
Kevin Christopher Mallon
Fishman & Neil, LLP
305 Broadway Suite 900
New York, NY 10007
(212) 822-1474
Fax: (212) 897-5841

*Counsel for Experian:*
Michael G. Morgan
Jones Day
555 South Flower Street
50th Floor
Los Angeles, CA 90071
(213) 243-2432
Fax: (213) 243-2539

*Counsel for HSBC:*
Preston Lee Zarlock
Phillips Lytle LLP
437 Madison Avenue
New York, NY 10022
(716) 847-8400
Fax: (716) 852-6100